Thank you. Please be seated. This is people versus Johnson for the appellate. I'm going to have you hold your opening until you may proceed. Good morning. May it please the court, counsel. We're here today because of the state's mistakes. Each of which show that the state was not diligent in pursuing its DNA testing in this case. There were four main mistakes and I'm going to tell you what each of them were and then I'll discuss them each in turn. The first mistake that the state made was that it failed to send Grenville's DNA to the lab at the outset, shortly after his arrest, when they sent in all the rest of the evidence to be tested. The state's second mistake was that it sat for another month after being advised by the lab that it was ready to proceed as long as it had two things from the state. Permission to proceed, to consume some evidence and testing, and Grenville's DNA sample. From that date, the state waited another month before it took any other action. The state's third mistake was, after finally receiving permission from the court to obtain his sample and then obtaining his sample, it didn't send his sample to the lab for another 86 days after that. Finally, the state forgot, sort of underlying all of this or an overarching problem is, the record would seem to indicate that the state never bothered to check the state's DNA database, which had held a copy of Grenville's DNA sample since late 2004 or early 2005. So, let's go to the state's first mistake. The state failed to send Grenville's DNA from the outset. I don't think there's any question that the state was diligent in sending all the rest of the evidence to the lab. It was less than two weeks after Grenville's arrest. They got everything together, shipped it off to the lab, forgot about Grenville's sample. I don't think there can be any question that the state wanted his sample tested and simply just forgot to send it, because a month later, when the lab sends a report saying, we've looked at everything, there is DNA that we can test, here's what we need. We also need Grenville's DNA sample. The lab would not have asked for his sample if the state had not said to the lab, we need it tested. The lab, I don't think, knows the evidence in the case. I don't think the lab is on its own making decisions on what to test and what to compare and what not to test. So, obviously, the state wanted his DNA tested. But, again, it didn't send it at the outset with all the rest of the evidence. So, the state's second mistake. Again, August 13th, the state sends almost everything, with the exception of Grenville's DNA, to the lab. September 11th, the state sends a lab report back saying, okay, we've looked at everything, everything that you sent us, we can test everything. But we need two things. First of all, we need permission from the court, because some of our testing is going to consume the blood evidence. There was some of the blood, like on the boots, for example, there's only a small amount. So that was going to be consumed in the testing. So the lab said, we need permission before we can destroy the evidence in testing it. They also said, please send us a copy of Grenville's DNA. Then the lab was waiting. The lab didn't have anything else to do at that point. It was another month on October 7th before the state did anything. But the state's next action was to ask for more time. Rather than do anything that the lab wanted it to do, which would have allowed the lab to proceed on the testing, the state said, we've been duly diligent. The lab is still working. We need more time. But the lab wasn't working. The lab said, this is what we need from you. It was not until another 13 days later almost that the state finally said, oh yeah, by the way, we need a copy of Grenville's DNA and we need permission to destroy some of this evidence in testing. Now, I'm going to come back to that. The state's third mistake was the trial court granted the state's motion to continue and the motion to obtain Grenville's DNA. So that was, like I said, on October 20th. I think the written order was entered on the 22nd. From that time, it appears that the state notified the lab and said, we've gotten the permission to destroy the evidence. You can go ahead and do the comparison testing with the blood evidence. But then they sat on his DNA evidence. Like I said, the lab had asked on September 11th, but they didn't do anything with it until October. They got his sample apparently in October. It was permission to get his sample in October. But then they didn't send it to the lab until the following January. There is no explanation in the record and no explanation on appeal as to what the state was doing for that 86 days or why it needed to wait 86 days when apparently it just should have turned around and sent it immediately to the lab. Again, last is the state failed to check the DNA database. I think not every delay would have been solved had the state checked the database, but a lot of the delays would have been solved. We still have the time from September 11th to October when the lab could have been working, but it was waiting for the permission to consume the blood in the testing. But the 86 days, the initial time frame, all of that could have been avoided had the state just called the lab and said, oh, by the way, you've got his DNA on file. Why don't you just go ahead and do a comparison with what we already have on file. So what's the conclusion? The state should not have been entitled to additional time because it wasn't duly diligent because of these mistakes. It didn't send us information. One of the questions I have, though, is that some of the mistakes or the consequences of the mistakes occur after the motion is granted. Yeah. So at the time the motion is granted, shouldn't that be the focus and isn't that what the case law suggests? Yes. The answer is yes to both of those questions. But even if we were to completely ignore the fact that the state sat on this sample for another 86 days after getting permission, the state hadn't been diligent up until the point that it got the extension of time anyway. Because what was it doing from September when the lab said these are the two things that we need? From September until October, it did nothing. The lab could not work. This statute is because it didn't have the permission that it needed. This statute is designed to give extra time when the state or the lab can't get this testing finished within the initial 120-day period. And the state has to show we've done everything that we can to get this testing done. But it's the lab that's got the problem. Was any of that brought to the trial court's attention at the October hearings? No. There's no indication that anyone had this September lab report except for the state. No, I mean the defense. What's going on? What's the due diligence here? Oh, I see what you mean. Yeah, the defense counsel objected. Well, I didn't ask you whether he objected for the record, which is how he objects. I'm asking whether or not anybody said to the judge, what's the deal here? What's taking so long? I mean, I was arrested in August, and this stuff was, I guess this stuff was taken either from me or from the crime scene or from somebody's apartment. A few days later, it's promptly, I think you would agree it was promptly sent to the lab. That part of it, yeah. Why, what's the rest of the holdup? My view of the record is none of those questions were asked. No. It was just like, judge, we really don't think they ought to have a continuance, but I guess I can see the necessity for these things. So I guess I just object for the record, but okay, let's go, you know. If I'm a trial judge, I want to know what's going on. Yes, and I think that the blame here, there are three parties here. There's the court, the state, and defense counsel. And I think the lion's share of the blame is with the state, because neither the court nor defense counsel had all of the information that I am presenting in this court with today. Specifically, defense counsel didn't know. There's no indication in the record. The defense counsel knew that the lab had informed the state a month prior to its motion that it was ready to go as long as it got these two things. I'm quite confident that had defense counsel known that, he would have vehemently objected, not just for the record, but on those specific grounds. I also think if the trial court had known that that was the case, the trial court would have said, well, state, what have you been doing for the last month? I mean, that's the natural next question. So I think then following that is, why didn't the state give all of this information? I don't have an answer for that. I don't think that the state was doing this deliberately. I mean, there's no indication of that in the record, but I think that what the record would indicate, that the state was certainly sloppy and just forgot. I mean, frankly, I think what happened is they got the lab report in September and said, oh, yeah, we've got to get around to doing that. Then looked at the calendar in August and said, oh, we're getting up against it here. We better get more time because they wasted a month. It wasn't that the lab needed that extra time. It was that the state wasted that month. So I think to go back to your question about why weren't these questions asked, I think that's the answer. And also the reason is it was the state's fault because the state didn't give the court all of the information that it should have. And I don't think there's also any question that had the trial court had all of this information, again, this is only information up until this point. This is ignoring the later mistake of not sending it to the lab for 86 days. Had the court been presented with all this information, I don't know how the court would have possibly granted this. And all the precedent that either I or the state cited shows that the state needs to act with due diligence. Again, I don't want to sound like I'm feeding a dead horse here, but how is sitting on this for a month duly diligent? Again, the purpose of the statute is if the lab needs extra time to get this stuff done. And that actually brings me to my next point. They probably didn't need any extra time to get this done, but for the state's mistakes here. It took the lab about a month every time to do the testing. Again, they got the stuff in piecemeal fashion. They got the first stuff in August, and about a month later the lab said, we're ready to go, you just need to give us these two things, permission and the DNA sample. In October, they apparently got the permission to proceed after the state proceeded. The state said on the record, I'm going to call the lab right away. Apparently he did call the lab right away. They proceeded. It was only another month, just a little over a month, before they had finished all of the rest of the testing. With the exception of Granville's DNA, because they still didn't have it. So then they didn't get it until January. Then it was from January until February, about another month, that it took them to finish that last leg of testing. That's three months altogether. But when the motion was granted to destroy the evidence and have defendants submit samples, that was known at the same time, it was known that that had to be done and it was done by motion, at the same time the court grants the continuance. Yes. So that is known to the court. And nobody said, Judge, why didn't they ask for this sample sooner? Without regard to whether they'd gotten anything back from it. And then the state could have said, well Judge, we haven't gotten it. We don't know if there's enough material on the boots to test. Or the state could have said, we do know. Right, right. Well, one would assume as asked they would give the answer. Yes, yes. But instead, defense counsel did nothing. No. They just said, it sounds reasonable to me and I understand why you would need this stuff because you see some evidence and you want to compare it. I think that everyone was looking at this. I think it's fair to say the defense counsel should have asked some of those questions. I think it's fair to say the trial court should have asked some of those questions. The record indicates that the court was concerned only with the two-week period and said, I mean, the court's only comments were, okay, you submitted it on the 13th. That's less than two weeks after his arrest. I find due diligence. Now, there's obviously more to the story than that. Well, I know. If any one of the three of us had been defense counsel, we'd say, why haven't you asked for a sample before now? Yes. That also would have been aided had the state been sort of offered full disclosure in its motion. If you read the state's motion, the state's motion implies that the lab has been sort of diligently working on this stuff, but now they just need this extra evidence to continue. But we know now that that wasn't the case. And like I said, I don't think there's any question that had defense counsel known that or had the state known that, those questions wouldn't have been asked. And had they been asked, I don't think we'd be here today because they wouldn't have gotten the additional time. Again, I don't think this month that they sat on this, none of the other two parties out of these three at this hearing knew about that. With that knowledge, this is not the same result. So, again, overarching, back to the point I was making just a moment ago, overarching is the fact that the state didn't really need this time. Now, I don't know exactly, does that come into the trial court's decision? In a way, it should. But, again, the state's motion was pretty weak in terms of what it just sort of implied, we need this extra time. But, in fact, they didn't. Had they been diligent, which, again, is the requirement, had the state been diligent, it wouldn't have needed any of this extra time. Because it was about, like I said, about three months, which is obviously less than the 120 days that the state had to bring him to trial. So, this case is different from, I think, every case that I cited, every case that the state cited. This could have been done within the initial time period. The state made mistakes, many of which aren't explained now on appeal. The state's mistakes, the ones before the trial court made the decision, and the ones after the trial court made the decision, actually delayed this trial. So, this is not a situation where, oh, well, maybe the state had about a week that they probably could have gotten on with a little bit more. We're talking about months here that the state delayed. And, in fact, I'd like to return to one other point. The fact that the state sat on a sample for 86 days, I think, technically, the cases say that, arguably, that wouldn't be... I mean, how can the trial court consider that? Obviously, the trial court can't consider that unless it's prescient. That didn't happen at the time he made his decision. But I don't know. I think it's, at the very least, extremely unfair for the state to now say, well, you know, the court wasn't going to know that we were going to flub this up and forget about it for another three months after the fact. But don't worry. Technically, he couldn't have considered that at the time, so let's just not worry about that now. I think there has to be some room for... I don't think a court will grant this kind of a motion in any circumstances without some idea that there's going to be continued diligence. And the state certainly doesn't argue that it's sitting on his sample after it got the extra time was continued diligence. Well, isn't that a basis for a motion as opposed to asking that somehow retroactively the original grant was bad based on what happens after? You mean, should defense counsel have filed another motion in the meantime saying... Well, you know, it seems as if the parties are thinking, we're going to know something in November. There's still a possibility we'll know something in November, but it's not November, early December. But nothing happened. No, nothing happened. So, once again, aren't we back to defense counsel? Judge, you granted this motion because there was due diligence. Now my client's going to be lucky to get tried in April or May. What's going on? The delay here is attributable to the state and the state's failures, but nothing of that was brought to the court's attention. No, and that certainly would have been nice. Now, I'm not convinced that that's... No, defense counsel, nice. Well, whose duty is it at that point? I think it's the state's burden to show due diligence. I mentioned in my brief, I don't think it's the defense counsel's burden to keep tabs on exactly how long the state... But wouldn't you say it's the defense counsel's obligation to point out the lack of due diligence after the motion's already been granted? So, like, you mean when they sit on it for 90 days, pointing out that they didn't? Well, I don't think defense counsel knew. I think he probably assumed that they... How does defense counsel know when they send it to the lab? I mean, I think... He doesn't. No, he has no way of knowing that. But you can say in January, what in the world is going on? You said originally you might be able to get this done in November. The trial judge knew that was probably unrealistic, and it would appear as if he may have given you the... I understand your secondary argument about that, but he gave you the extra 120 days, but this is ridiculous. I mean... Well, then he could have found out. They sat on it for 30 days, 60 days, 45 days, whatever it is after the October 20th date. I think that you're asking a little much of defense counsel when counsel doesn't know what's...  Defense counsel doesn't have the information. Defense counsel didn't know about the September lab report, so he couldn't object on those grounds at the hearing. Defense counsel doesn't know and certainly wouldn't reasonably believe that the state would sit on Grandville's sample for another three months after getting permission to send it off. I mean, I think probably somewhere in the back of his mind, he was thinking, you know, this is certainly taking a while. But I think that to shift it over to defense counsel and say, well, really the fault here, if we're assigning blame, the blame here lies with defense counsel for not bringing this back to the court's attention. No, the fault lies with the state for sitting on it for another 90 days after that. I just don't see how it could go back on defense counsel. It's the state's burden to show due diligence in the first place. They certainly need to have continued diligence. And then to say, well, defense counsel didn't object after the fact just seems to me to be patently unfair. In a perfect world, like I said, it would have been nice, but I don't know, A, how he could have, and B, if he didn't, how that in any way, shape, or form excuses the state's problem. It's not his job to make sure that the state sends everything off to the lab in a timely fashion, which they should have done in August. If there are no further questions, I'll end the call. Thank you. Thank you. May it please the court. The state maintains that the trial court properly found that the defendant at the state exercised due diligence in obtaining DNA testing results and was therefore entitled to the continuance. This issue is forfeited. At no time did defendant dispute the court's finding of due diligence. At the hearing on the motion to continue, he objected generally for the record. At the hearing on the motion to dismiss, the defense counsel argued only that the court had not granted the state additional time beyond the 120 days. And in the post-trial motion, defense counsel argued only that the trial court had not actually granted the state the continuance. Therefore, the trial court was not presented with an argument by defendant or his counsel that the state had not complied with due diligence. On the merits, this court should not overturn the trial court's ruling on due diligence unless it amounts to a clear abuse of discretion. Given the information that the trial court had before it when it made its finding of due diligence, and the record as it existed at that time, the trial court did not abuse its discretion. Can the state profit by not revealing information to the trial court? In this case, I think that my opposing counsel is referring to that one lab report, I guess, that required the, I'm not sure, I think that's what he's referring to. That wasn't in discovery until after the motion was ruled on. Well, when you said based on the information the trial court had available, and I wasn't referring to anything particularly, but can the state profit by not making information available to the trial court? And then we just say, oh, the trial court didn't have that information. I think that the trial court knew that the state had submitted the evidence to the lab 12 days after the defendant's arrest, and the trial court knew that the DNA sample from the defendant was necessary because the lab had found samples apparently susceptible to DNA analysis. But was the state obligated to say, we knew that the lab wanted a sample? Because they told us that in whatever the date was in September, but we don't file the motion to even continue until October 7th, and we don't begin the process of asking the court to require this to be done until late October, or after the middle of October. I mean, if that had been in the motion, that I was prompt in sending away the materials, but then I waited to ask for a DNA sample, maybe the trial judge may very well have looked at it differently, or provided a specific deadline, say, I'm giving you another 30 days, period. That's it. You need to move forward. The trial court knew that the lab did not have a DNA sample from the defendant because that's what they asked for on the very day that they asked for the motion for continuance. On the October 7th date? On the October 15th date. They filed a motion to permit destruction of DNA evidence in a DNA testing lab. Was it at an earlier date that they filed the motion to continue? Maybe I just looked at the date wrong. I think they were all filed the same day, and all heard the same date. So on that day that they granted the motion for continuance, the court knew that the lab did not have a DNA sample from the defendant. Actually, it was an October 7th motion, and that motion did not include the request. That was requested on October 15th, and then the hearing was ultimately conducted on the 20th. I think they came in and it got bumped over a couple of times. Okay. Well, I think the state's argument is that the trial court had before it enough information to rule on due diligence, and that it did not abuse its discretion at that time, and that anything subsequent to that is not involved in this court's review of the decision to grant continuance. The DNA sample from the defendant was not necessary until the crime lab found biological material suitable for DNA testing. The police routinely collected the evidence at the crime scene, routinely collected the victim's blood, routinely sent the evidence to the lab to preserve anything. The lab routinely processed the evidence, finding biological material available for DNA testing. It's at that point that the state filed a motion to permit the destruction of evidence in DNA testing, a motion to order biological samples from the defendant, and a motion for continuance based on due diligence and the lab's representation that it would be able to complete some of the testing by November 4th. At the time of the hearing on the motion, this was all the state could do. Send the swab to the lab. If it results that the DNA was extracted, get an order for biological samples from the defendant. Well, when were the swabs actually sent? Pardon me? When were the DNA samples actually sent? The DNA samples of the victim were sent immediately. The defendant? The defendant, I think they were sent January 8th. So that's like a lot more time than within 30 days, right? But the motion was ruled on in October. Yeah. So, yeah, it is more than 30 days. Was there an explanation for that? There's no explanation for that in the record. What are we to presume then? At the time the court ruled on the motion, he did not abuse his discretion in granting it because there was due diligence at the time. But then due diligence disappeared for 86 days? I think that this court, based on Craig's law, needs to focus on the October 20th date, and I don't think that the motion was not a ruse or an effort on the state to bypass this trial. I think that the motion was, in all earnest, part of the state trying to get the case to trial. And I'm not able to explain the actions out of that, based on the record. I think there's two cases in my brief. The Swanson case and the Babels case, where the defendant argued in Swanson that the test results were not material since he did not contest the sexual encounter. But the court chose to focus on what was before the trial court at the time of the hearing. And at that time, the defendant had not yet conceded that the sexual intercourse had taken place. So the defendant was arguing something that was not relevant to the trial court's decision, like arguing things that happened after the motion was granted. And in Babels, a Fifth District case out of 2000, the court rejected the state's invitation to consider matters raised after the motion was ruled on. Matters brought up subsequently at the argument at the hearing on the motion for discharge. I think in this case, the state clearly did not delay excessively in getting the DNA materials to the lab, and the lab did not take an excessively long time in getting results processed. The record gives no indication that the request for continuance was a ruse, or that the state was careless, indifferent, or mendacious in its attempt to gain additional time. I think the Colson case by this court, a Fourth District case out of 2003, on appeal, this court observed that the crime lab had received the evidence about three weeks after the arrest. The lab had received a sample of the victim's boyfriend's blood about a month later than that. This court found that the trial court did not abuse discretion in granting a motion for continuance. Are there any other questions? There don't appear to be any. Thank you. Yes, the court is to affirm the defense conviction. Thank you. Bo? Thank you, Your Honor. Justice Kinect, going back to what we were discussing a few minutes ago, I think you can look at the question about whether defense counsel should or shouldn't have objected after this motion was granted. I think you can look at it like this as well. If the 86 days couldn't have been considered by the trial court in reaching its initial decision, which it couldn't have technically, of course, because it had already granted the motion, if that can't be counted against the state now, then why should defense counsel's failure to subsequently object be counted against him? The issue here, and this court can decide this issue on the fact that there was no due diligence exhibited by the state at the time. This court doesn't have to find that this 86 days, I mean, it just sort of shows what was going on in this case, but that's not dispositive to this case. The state hadn't exercised diligence at the time that it said it had and when the court found that it had. That's what this case should first turn on. Turning to my second argument, just briefly, I don't see any merit in the state's position that the court granted it 120 days or as much time as it needed. This court already decided this issue in 2001 in Johnson when it said that the length of a state's continuance necessarily depends on how much time it asked for. I don't know how you can be more specific than from date A to date B, which is exactly what the state's motion here said. It only asked for that period of time. Obviously, it turned out that it needed a lot more, but it didn't need more time because the lab needed more time. It needed more time because, again, it forgot to do what it was supposed to do. Finally, I'd just like to close by saying that affirming the trial court's decision, or more broadly, the state's actions here, would essentially gut the requirement of due diligence. The cases all say that due diligence means what it says. It's decided on a case-by-case basis, but the state needs to show that it has done everything it can, and it's been waiting, but it's waiting on the lab because the lab has backlogged. There are a lot of cases that are understaffed. That's not what happened in this case. The record, again, I haven't heard any dispute from the state, especially for this time period from September to October when the lab wasn't working. That's a month that the state wasted. That in no way, shape, or form can be considered duly diligent. And then the fact that the state didn't give that information, didn't put that information in its, I don't blame them, but as an officer of the court, it should have obviously let the trial court know to make an informed decision. Is there a date or a notation in the record that the crime lab said sometime between September and October, or between August and October? Thanks for sending us this stuff. It looks like there's enough to test. That's what that September 11 lab report said. That's exactly what it said. And that September 11 report is received by the state when? Can you tell that from the record? No, I can't. I would assume. But they must have known it because that's partly why they filed the motion to continue. Yeah, based on the time frame in which they received the other lab reports. I mean, I don't think reasonably it can be assumed that it would be a month. Even if they mailed it, what's three days? I mean, this is not like it has to come out of the prison system. It's going to take three weeks to get mailed out. It was dated September 11. I don't think the lab's delaying in sending it out. So the state knew. The state didn't need the extra time in this case. It said that it did. The trial court erroneously granted it. And then the state, again, sat on it for another 86 days after it got this extra time that it didn't need in the first place. There are cases that talk about that motions for continuance under this statute should not be a, oh, your honor, we'd like some extra time. If this court affirms, that's what it's going to be. Because there was no due diligence in this case at the time that the state filed this motion. This court can reverse just on those grounds. But the fact that the state made all these subsequent mistakes certainly doesn't help its position now on appeal. Thank you, your honors. Thank you. We'll stand in recess until the readiness of the next case, which will be at 1 o'clock.